IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHERRY L. SINGLETON, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Civil Action No.: 2:17-cv-01947-RDP |
| } | |
| NANCY A. BERRYHILL, } | |
| Acting Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OF DECISION**

Plaintiff Sherry Singleton brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the documents submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

On August 6, 2014, Plaintiff protectively filed an application for disability and disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Act alleging disability as of June 29, 2014. (R. 16, 56, 58, 73, 153-68). The Social Security Administration ("SSA") initially denied Plaintiff's application on November 12, 2015. (R. 16, 36, 92-100). On January 14, 2015, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. 16, 90-91). That request was granted (R. 103-05), and Plaintiff received a hearing before ALJ Emilie Kraft on December 7, 2016. (R.

16, 34-55, 117-22). On January 31, 2017, the ALJ issued a partially favorable decision, finding that Plaintiff was not disabled prior to March 28, 2016, but became disabled on that date and continued to be disabled through the date of the decision. (R. 12-33). After the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision[1] (R. 1-11, 151-52), the ALJ's decision became the final decision of the Commissioner, and, therefore, a proper subject for this court's review.

## II.     Statement of Facts

Plaintiff's application alleges disability due to a brain aneurysm. (R. 57, 204). She completed two years of college and has past relevant work as a licensed practical nurse. (R. 52, 205, 371, 376-77). She was 44 years old at the time of the ALJ decision. (R. 12, 38).

On June 29, 2014, Plaintiff suffered a brain aneurysm while driving. (R. 269). She presented to the emergency department at UAB Hospital and was diagnosed with encephalopathy secondary to subarachnoid hemorrhage, intraparenchymal hemorrhagic stroke, concussion, and electrolyte imbalance. (R. 270, 272, 307). Plaintiff was treated with endovascular coil embolization on June 30, 2014, followed by placement of a ventriculoperitoneal shunt to treat hydrocephalus on July 7, 2014. (R. 280, 291, 309-11, 313-18, 517). She was discharged on July 10, 2014. (R. 332-46).

On July 22, 2014, Plaintiff had a follow-up visit with UAB neurologist Dr. Mark Harrigan. (R. 348). Dr. Harrigan removed Plaintiff's staples and noted that she was doing "quite well." (R. 348). Plaintiff was told to return to Dr. Harrigan in six months and was encouraged to follow-up with her primary care physician for blood pressure control. (R. 348).

---

[1] Plaintiff did not submit additional evidence at any time from the date she requested review, February 3, 2017, through the date the AC denied review, September 20, 2017. (R. 1-11, 151).

2

Two months after the aneurysm, in August 2014, Plaintiff and her daughter completed function reports. (R. 210-28). Both reports indicated that Plaintiff had significant limitations in performing activities of daily living and stated that Plaintiff could not drive, cook, or go out alone. (R. 19-20, 211-15, 217-21, 223-24).

Plaintiff followed-up with Dr. Harrigan as instructed on October 14, 2014. (R. 517). Plaintiff reported having "several spells of staring associated with some headaches, no loss of bladder control, no evidence of generalized tonic-clonic seizures." (R. 517). Dr. Harrigan prescribed Plaintiff Keppra as "empiric therapy" to "see if the spells resolve." (R. 517). Dr. Harrigan also ordered a head CT scan which was "unremarkable" with "no sign of subdural hematoma, ventriculomegaly or other concerning findings." (R. 518-19).

On October 18, 2014, Plaintiff underwent a consultative examination by Dr. Danielle Powell at MDSI Physician Services. (R. 370-74). Plaintiff reported being able to attend to her personal needs but stated that she was able to perform very little housework or yard work due to headaches and fatigue. (R. 370). She reported experiencing headaches, memory loss, and fatigue since her surgery, but stated that her treating physician advised her that it could take more time for headaches to resolve following surgery. (R. 371). After examination, Dr. Powell concluded that Plaintiff was able to do the following: stand for up to four hours secondary to fatigue; walk up to five hours secondary to fatigue; reach overhead and forward, handling, fingering, and feeling occasionally; climb steps and stairs occasionally; stoop, crouch, kneel, and crawl occasionally secondary to fatigue. (R. 374). Dr. Powell concluded that Plaintiff was unable to lift due to recent surgery, and climb ladders, scaffolds, or ropes. (R. 374). Plaintiff was also advised to limit travel. (*Id.*).

On October 24, 2014, Plaintiff underwent a consultative psychological evaluation by Dr. Sharon Waltz. (R. 376-79). Plaintiff reported symptoms of anxiety since the aneurysm and short-term and long-term problems with memory. (R. 377). Dr. Waltz found that Plaintiff "has a mental impairment present to a moderate degree. … [with] constriction of interests and difficulties relating to others due to mental health symptoms." (R. 378). As to her ability to work, Dr. Waltz concluded that Plaintiff's "ability to understand, to carry out and to remember instructions and to respond appropriately to supervision, co-workers and work pressures in a work setting, despite her impairments, is Moderately Impaired." (R. 378). Around the same time, state agency psychiatrist Dr. Robert Estock completed a mental health assessment of Plaintiff, and found Plaintiff had moderate limitations but remained capable of carrying out short and simple instructions. (Tr. 20, 67-69).

On November 2, 2014, Plaintiff was brought to the UAB emergency department by ambulance for possible seizures. (R. 432). Notes from the visit indicate that Plaintiff had "a staring spell" with associated "uncontrollable upper and lower extremity shaking" and "a right sided throbbing headache today which she says she has had frequently since discharge from [aneurysm] admission." (R. 432, 438). Medical testing revealed no acute intracranial abnormality, stable conditioning of the shunt catheter, and unchanged size of the ventricles. (R. 435). The seizure was "not believed to be related to shunt" and Plaintiff was directed to restart Keppra, the anti-seizure drug she had been prescribed in October 2014, which she had stopped taking due to side effects. (R. 436-37).

On January 27, 2015, Plaintiff returned to Dr. Harrigan for a routine follow-up. (R. 520). Plaintiff reported "occasional" headaches and that she had once again stopped taking Keppra because of dizziness as a side effect. (R. 520). Despite discontinuing use of Keppra, Plaintiff

4

reported that she had not had any more spells "concerning for possible seizure." (R. 520). Dr. Harrigan ordered an MRI of Plaintiff's head which revealed "mild residual filling of the coiled ACOM aneurysm along the base and medial margins of the aneurysm sac. No new intracranial aneurysm identified." (R. 523).

On February 11, 2015, Plaintiff again went to the emergency room at UAB due to a throbbing headache with intermittent sharp pain lasting 3 days. (R. 448). A CT scan revealed no acute or significant intracranial abnormality, no intracranial hemorrhage, and a stable right front shunt catheter. (R. 453, 456-57).

Four months later, on June 23, 2015, Plaintiff presented to Dr. Mark Harrigan at TKC Neurosurgery due to "some trouble with headaches and a single brief spell of blurry vision while she was driving, no trouble with seizures." (R. 459). Dr. Harrigan noted that "overall she is doing quite well." (R. 459). Dr. Harrigan noted that Plaintiff tried Keppra but discontinued using it due to side effects. (R. 459). A CT scan was unremarkable with no sign of hydrocephalus and Dr. Harrigan informed Plaintiff that he did not believe she was having shunt problems or seizures. (R. 459). Plaintiff was encouraged to follow up with Dr. John Deveikis for routine surveillance imaging of the aneurysm. (R. 459).

On July 15, 2015 Dr. Deveikis ordered an MR anglogram with contrast. (R. 462). That imaging revealed the filling of Plaintiff's previously treated aneurysm. (*Id.*). Plaintiff underwent a second embolization procedure on August 18, 2015. (R. 473, 479-80, 508). Plaintiff followed-up with Dr. Deveikis on September 2, 2015. (R. 509). She reported mild headaches which were relieved with acetaminophen and was noted to be "doing well after endovascular treatment of aneurysms." (R. 509-10). Additional follow-up imaging on February 24, 2016 showed no significant filling and Plaintiff reported that headaches were no longer a problem. (R. 512-13).

5

However, at this visit Plaintiff complained of periodic right shoulder and arm pain as well as episodes of an ashen grey appearance to her fingers on the right, which was relieved with the application of heat. (R. 513). Plaintiff was advised to follow-up with her primary care physician for the shoulder and arm pain. (R. 516).

On March 28, 2016 Plaintiff presented to UAB with arm pain, numbness, and paresthesia. (R. 463). She was noted to have strength deficit on the right side but no headaches. (R. 463). An MRI of the cervical spine revealed a "large right paracentral/foraminal disc protrusion at the T1-T2 level and direct compression of the exiting nerve root, a large disc protrusion at the C3-C4 level, and right-sided disc/osteophyte complex at C5-6 that may compress the exiting right C6 nerve root." (R. 466, 470). Dr. Augustin diagnosed cervical root compression, high thoracic nerve root compression, radiculopathy, and right upper extremity pain. (R. 467).

Given the onset of progressively worse right upper extremity pain, the right-sided weakness, and the results of the MRI, the ALJ found Plaintiff disabled as of March 28, 2016. (R. 24-25, 27). Because Plaintiff was receiving medical treatment, including medications, physical therapy, and pain blocks, the ALJ recommended disability review be repeated after 24 months. (R. 25).

## III.  ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ made an initial determination that Plaintiff meets the insured status requirements of the Act through December 31, 2019. (R. 18). Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability, June 29,

7

2014. (R. 18). The ALJ decided that, since the alleged date of onset, Plaintiff has had the following severe impairments: recurrent anterior communicating artery aneurysm, history of aneurysmal subarachnoid hemorrhage and hydrocephalus with VP shunt placement, anxiety disorder, cognitive disorder, obesity, and anemia. (R. 18). The ALJ found that Plaintiff has the additional severe impairment of disc protrusion with nerve root compression as of March 28, 2016. (R. 18). Plaintiff's complaints of headaches and hypertension were found to be non-severe impairments on the ground that medical evidence did not establish that those conditions have "caused more than minimal functional limitations or restrictions for a period of 12 continuous months." (R. 19). Overall, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (R. 19-21).

The ALJ found that, *prior to March 26, 2016*, Plaintiff had the RFC to perform sedentary work, limited to understanding, remembering, and carrying out one-to-three-step instructions, with no more than occasional contact with the general public and avoiding excessive workloads, quick decision making, and multiple demands. (R. 21). After determining Plaintiff's RFC, the ALJ concluded that Plaintiff "was unable to perform any past relevant work" since June 29, 2014. (R. 25). However, she also determined Plaintiff was capable of performing a significant number of other jobs in the national economy during that period. (R. 26-27). Based upon these findings, the ALJ concluded that Plaintiff was not under a disability, as defined in the Act, from June 29, 2014 through March 25, 2016. (R. 26-27). It is that decision that is challenged here.

**IV.    Plaintiff's Argument for Reversal**

On appeal, Plaintiff is not represented by counsel. She challenges the ALJ's finding that she was not disabled prior to March 28, 2016. (Doc. #15 at 1) ("[I] [am] arguing the beginning

date of my disability."); (Doc. #17 at 1) ("I … am submitting evidence of medical records to prove that I was disabled in 2014 and 2015."). With her filings in support of disability, Plaintiff submits medical records. Certain pages of those records were not included in the administrative record. (Pl. Br., Doc. #17 at 3; Doc. #17-1 at 1-3; Doc. #17-2 at 12-19). Therefore, the court will consider (1) whether the ALJ's decision is supported by substantial evidence, and (2) whether remand under sentence six of 42 U.S.C. § 405(g) is warranted due to new evidence.[2]

## V.     Standard of Review

The issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations

---

[2] On November 6, 2018, Plaintiff filed a Response to Statement of Issues from Document Filed on September 25, 2018 (Doc. #19). That Response adds to Plaintiff's previous argument asserting that back-pay should be awarded from the June 2014 onset date. (Pl.'s Response, Doc. #19 at 4). Specifically, Plaintiff argues she has complained about "back, neck, and right arm pain" since her brain aneurysm in June 2014. (*Id.* at 2, 3). The court notes that it has considered Plaintiff's Response in full, despite the fact that it was filed well after the deadline of October 9, 2018. (*See* Doc. #16).

9

omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

Plaintiff "bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). On appeal, Plaintiff fails to cite to the Commissioner's record in support of her claim that it was error to find her "not disabled" in 2014 and 2015. "However, this court shows leniency to pro se litigants. Therefore, when reviewing the appeal of a *pro se* plaintiff, this court will thoroughly review the evidentiary record and the ALJ's opinion to determine whether the ALJ's findings are supported by substantial evidence." *Pearson v. Commissioner*, 2017 WL 1196966 at *2 (N.D. Ala. March 31, 2017) (citing *Billings ex rel. Wells v. Colvin*, 2014 WL 584313 at *3 (N.D. Ala. Feb. 13, 2014)).

Upon careful review of the entire record, the court concludes that the Commissioner's decision was supported by substantial evidence and is in accordance with applicable law.

### A. The ALJ's Decision is Supported by Substantial Evidence.

The Social Security Act defines disability as the inability to do any substantial and gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or last 12 or more continuous months. 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). The fact of a medical impairment does not create a presumption of disability. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (stating that the mere existence of

an impairment does not reveal the extent to which it limits the ability to work or "undermine the ALJ's determination in that regard"); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (concluding that a permanent impairment does not necessarily mean an inability to do any work). Although there is no question that Plaintiff suffered a brain aneurysm and subsequent filling of the previously-treated aneurysm, this is not enough, standing alone, to establish disability. To prove that she is entitled to disability benefits for the time period prior to March 28, 2016, Plaintiff must produce medical and other evidence showing that she had work-related limitations from her impairments and that those limitations were so severe as to prevent her from performing any substantial gainful activity. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Plaintiff has not satisfied that burden.

The ALJ thoroughly studied Plaintiff's medical records prior to March 28, 2016 and, after doing so, concluded that Plaintiff was not disabled from June 29, 2014 through March 28, 2016. (R. 21-25). At Plaintiff's one-month follow-up with Dr. Harrigan following the endovascular coil embolization and ventriculoperitoneal shunt placement, Dr. Harrigan noted that Plaintiff was doing "quite well" and was instructed to follow-up again in six months. (R. 348). Although Plaintiff completed a function report stating that she had significant limitations, consultative examinations in October 2014 stated otherwise. (R. 371-74, 376-79). The physical medicine and rehabilitation evaluation revealed no difficulty getting on or off the examination table, normal gait and stride, 5/5 strength in upper and lower extremities, normal muscle bulk and tone, and cranial nerves grossly intact. (R. 372-73). The psychological evaluation finding was that Plaintiff was "moderately impaired" with her ability to understand, carry out and remember instructions, and respond appropriately to work pressures. (R. 378). Although Plaintiff was seen in the ensuing months reporting that she was experiencing some seizure-like symptoms, she was prescribed

Keppra for empiric reasons. (R. 436-37, 459, 517). Plaintiff experienced undesirable side effects from the medication and stopped taking the medication; however, she reported no further seizure-like activity. (*Id.*).

Finally, the ALJ questioned the Vocational Expert with regard to Plaintiff's mental and physical limitations. (R. 52-53). The ALJ limited Plaintiff to sedentary exertion with additional postural and environmental limitations to accommodate physical limitations due to aneurysms, anemia, and obesity to avoid exacerbating symptoms, including headache, pain, and fatigue. (R. 24-25, 52-53). The ALJ also took note of the need for Plaintiff's mental symptoms to be accommodated indicating she should be limited as follows: simple one-to-three step instructions, with only occasional contact with the public; gradual, infrequent changes; and no excessive workloads, quick decision making, or multiple demands. (R. 25, 52-53). Based on these parameters, the VE opined that Plaintiff could not perform her previous job but could perform other work in the national economy, such as document preparer, table worker, and packaging worker. (R. 53).

Considering the record in its entirety, the court easily concludes substantial evidence supports the ALJ's findings. *See* 42 U.S.C. § 405(g); *Martin*, 894 F.2d at 1529.

**B.     Plaintiff's Additional Evidence Fails to Warrant Remand under Sentence Six.**

Attached to her briefing in this court, Plaintiff submitted evidence not previously submitted to the ALJ or to the Appeals Council.[3] Because Plaintiff is proceeding *pro se*, the court construes that action as seeking remand under sentence six of 42 U.S.C. § 405(g). *See Hearn v. Comm'r of Soc. Sec.*, 619 Fed. Appx. 892, 894 (11th Cir. 2015) (per curiam) (noting that sentence six remands address situations where new evidence is first presented to a district court). However, after careful

---

[3] All of the additional records predate the December 7, 2016 hearing, as well as the denial of review by the Appeals Council. (*See* Pl. Br., Doc. #17 at 3; Doc. #17-1 at 1-3; Doc. #17-2 at 12-19).

consideration, the court finds that this case is not due to be remanded for consideration of the new evidence.

To show that a sentence six remand is warranted, a claimant must establish that: (1) the evidence is new and noncumulative; (2) the evidence is material such that a reasonable probability exists that it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. 42 U.S.C. § 405(g); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985). Plaintiff submitted twelve pages of evidence which were not included in the administrative record. She has made no attempt to explain why the evidence was not presented earlier. (*See generally* Pl. Br., Doc. #17; Pl. Response, Doc. #19). For this reason alone, remand under sentence six is unwarranted. *Arnold v. Comm'r*, 724 Fed. Appx. 772, 784-85 (11th Cir. Feb. 13, 2018) (finding remand under sentence six unwarranted where claimant "failed to establish good cause for failing to present his affidavit about the proceedings on his first application to the agency"); *McGriff v. Comm'r*, 654 Fed. Appx. 469, 473 (11th Cir. June 30, 2016) (finding remand under sentence six unwarranted because claimant offered no reason for failing to submit a report to the Appeals Council); *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987) (concluding that "the good cause requirement reflects a congressional determination to prevent the bad faith manipulation of the administrative process"). However, and in any event, none of the other elements necessary for a sentence six remand are met in this case.

1. **Letter from the Alabama Medicaid Agency**

A letter from the Alabama Medicaid Agency, dated April 11, 2016, was included for the first time with Plaintiff's district court briefing. The letter indicates that Plaintiff and her two minor children "will continue to get Medicaid." (Doc. #17 at 3). Of course, absent specific

information about the preceding time periods, a letter dated April 2016 cannot be relevant to whether Plaintiff was disabled in 2014 and 2015. *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (2016) (new evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision"). Nor is Medicaid status relevant to whether or when Plaintiff became disabled for purposes of social security. *See Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (evidence is material if "there is a reasonable probability that the new evidence would change the administrative outcome"). For these additional reasons, this new evidence does not warrant remand.

## 2. 2014 Neurovascular Ultrasound Records

During Plaintiff's June-July 2014 hospitalization for a ruptured brain aneurysm, neurovascular ultrasounds were performed. (Doc. #17-2 at 12-19). Reports from these ultrasounds are included for the first time with Plaintiff's district court filing.

The ultrasounds were considered abnormal and showed evidence of "hyperemia and possible mild vasospasm in the right middle cerebral artery," "hyperemia in the left middle cerebral artery and both anterior cerebral arteries," "moderate to severe vasospasm in the left middle cerebral artery," and "vasospasm in the left anterior cerebral artery." (*Id.*). These records, while chronologically relevant, are not material. That is, while the ultrasound reports themselves were not considered by the ALJ, other records from Plaintiff's June-July 2014 hospitalization were thoroughly considered, including numerous reports evidencing the brain hemorrhage, endovascular coil embolization, and placement of a ventriculoperitoneal shunt to treat hydrocephalus. (R. 269-346). The ultrasound records only further evidence the need for the procedures which were performed in June-July 2014. They are cumulative and aided the physicians in determining the course of treatment for Plaintiff. For this additional reason, this new

evidence does not warrant remand. *See Carson v. Comm'r*, 373 Fed. Appx. 986, 988 (11th Cir. 2010) (denying request for remand on the ground that the new evidence would not change the administrative outcome); *Rogers v. Colvin*, 2013 WL 4851611 at *7 (N.D. Ala. Sept. 10, 2013) (finding no reasonable probability that new medical records would change the outcome).

### 3. Discharge Summaries

Included for the first time with her district court filing, Plaintiff has presented discharge summaries from her June-July 2014 hospitalization. (Doc. #17-1 at 1-3). Of course, these discharge notes merely summarize the procedures performed during her hospitalization, as well as the diagnoses made during that period of time. The June-July 2014 hospitalization was thoroughly considered by the ALJ in reaching her conclusion denying benefits. Therefore, as explained above, inclusion of these records would be cumulative. For this additional reason, this new evidence does not warrant remand. *See Carson*, 373 Fed. Appx. at 988; *see also Rogers*, 2013 WL 4851611 at *7.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this November 16, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE